IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| GETTIG TECHNOLOGIES, INC., | * CHAPTER 7 |
| Debtor | * |
| | * CASE NO. 1:05-bk-06044-MDF |
| | * |
| | * |

## OPINION

Before me is the Motion of the Chapter 7 Trustee, John P. Neblett, Esquire, ("Neblett") to approve a supplemental distribution to unsecured creditors in the above-captioned bankruptcy case. For the reasons set forth below, the Motion will be denied.

### I. Background

Gettig Technologies, Inc. ("Debtor") filed a voluntary petition under Chapter 11 on September 9, 2005, which was converted to Chapter 7 on October 17, 2012. On September 16, 2015, Neblett filed his Final Report and Application for Compensation. The Final Report was approved by an Amended Order dated October 15, 2015, and Neblett issued checks to the claimants in accordance with his proposed distribution.

On January 28, 2016, Neblett filed the Motion that is now before me seeking approval to distribute $22,770.27 remaining in the estate account after six checks were returned uncashed. Four checks were returned as being undeliverable, one check was returned because the claim was paid from another source, and one check was returned after it was refused by the claimant.[1] The rejected check was returned by the Chapter 7 trustee for Alliance Financial Capital ("AFC"), which had filed its own

---

[1] A check to International Sureties, LTD in the amount of $755.44 was returned because it had been previously paid without the claimant adjusting its claim. Two checks to Richard Wagner in the amounts of $409.64 and $512.05, respectively, were returned with the annotation "returned to sender not deliverable as addressed unable to forward" as were one check to Federal Express Corporation in the amount of $176.32 and one check to United Telephone Co. of IN, Inc. in the amount of $447.10. As conceded by Neblett, the four undeliverable checks fall squarely within the requirements of § 347(a) and must be paid into court.

bankruptcy case in the Northern District of California in 2008.[2] The AFC trustee returned an $18,702.36 check to Neblett because the case had been closed on December 5, 2010, and he was unwilling to open the case to administer the funds.

On January 29, 2016, the Clerk issued a notice scheduling a hearing on the Motion for supplemental distribution to be held on February 23, 2016. No objections to the Motion were filed. The Trustee appeared at the hearing and presented argument. The matter was taken under advisement.[3]

## II. Discussion

The disposition of uncashed estate checks is governed by 11 U.S.C. § 347(a) which provides as follows:

> **§ 347 Unclaimed property**
>
> (a) Ninety days after the final distribution under section 726, 1226, or 1326 of this title in a case under chapter 7, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28.

11 U.S.C. § 347(a).

Section 347 describes the process a trustee must follow when handling funds that have accrued after final distribution has been completed, but some dividend checks have not been negotiated. *See* 3 *Collier on Bankruptcy*, ¶ 347.01 at 347-3 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2015). In cases filed under Chapters 7, 12, and 13, §347 requires a trustee to stop payment of any check that remains unpaid ninety days after the trustee makes final distribution. The remaining funds held by the

---

[2]In re Alliance Financial Capital Inc., Case No. 08-30575, Bankruptcy Court for the Northern District of California.

[3]The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052, which is applicable to contested matters pursuant to Rule 9014.

2

trustee are then paid into court and disposed of under chapter 129 of title 28 of the United States Code. 11 U.S.C. § 347(a).

In the matter before me, Neblett stopped payment on six checks that had not been cashed ninety days after the final distribution. He then requested that he be authorized to pay a supplemental distribution to unsecured creditors. Although he requested authorization to disburse six checks in the Motion, at the hearing Neblett limited his request for relief to the check returned by AFC. Unlike the other five checks, Neblett argues that § 347(a) does not apply to the AFC check because the funds were "abandoned" by the AFC trustee and, thus, were not "unclaimed." As support for this exclusion, he cites the Handbook for Chapter 7 Trustees (the "Trustee Handbook").[4]

The Trustee Handbook provides that "[w]hen a creditor returns funds to the trustee because the creditor has been paid from another source, the trustee must redistribute the funds to other creditors according to the priorities set forth in sections 507 and 726 and in accordance with Fed. R. Bankr. P. 3010 and 3011." Trustee Handbook, p. 4-32. This guidance does not address the situation before me. Here, a check was returned, but the claim remains unsatisfied. Only the check payable to International Sureties was returned because the claimant had been paid from another source. The AFC trustee's refusal to administer the funds cannot be equated with payment from another source. Creditors of AFC were entitled to receive the funds, but the AFC trustee determined that administration of this amount would not be worthwhile.

Further, Neblett's broader argument that § 347(a) does not apply because the distribution to the AFC trustee was not "unclaimed," both affords too much weight to the section heading and misconstrues the term "unclaimed." "[T]he title of a statute . . . cannot limit the plain meaning of the text." *Pa. Dept. of*

---

[4] The Trustee Handbook is a publication of the United States Department of Justice, Executive Office for United States Trustees ("EOUST"). The United States Trustee for each region is responsible for supervising Chapter 7 trustees appointed to the panel. 28 U.S.C. § 586(a)(1). *See* http://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.pdf/download (last visited February 29, 2016).

3

*Corr. v. Yeskey,* 524 U.S. 206, 212 (1998). " A statute's heading is 'of use only when [it] shed[s] light on some ambiguous word or phrase.'" *U.S. v. BDO Seidman*, *LLP*, 492 F.3d 806, 823 (7th Cir. 2007) (citing *Yeskey*, 524 U.S. at 212). Neblett does not argue that the phrase "check remaining unpaid" in the text of the section is ambiguous. Only the presence of an ambiguous term in the text of the statute justifies an examination of the heading to illuminate the meaning of the text.

To the contrary, Neblett's argument introduces ambiguity through a syllogism based on a false premise. Although he correctly argues that a check that is unpaid must be understood as unclaimed property, he incorrectly asserts that unclaimed property does not include abandoned property. Nothing in the statute suggests that only checks that the owner does not know about should be treated as "unclaimed." Neblett's construction of § 347(a) unnecessarily complicates a rather straightforward statutory provision. The text of the statute directs a trustee to perform two tasks : (1) stop payment "on any check remaining unpaid" after ninety days and (2) pay "any remaining property" into the court. A check that has not been negotiated by the payee and that remains unnegotiated after ninety days, for whatever reason, is an "unpaid check."

Congress has expressed its intent that claims not cleared by payment are to be paid into court, not redistributed to other creditors. Section 347(a) is unambiguous,[5] and the Trustee Handbook guidance only applies when the claim has been paid by another source. Therefore, the funds that otherwise would have been paid to AFC must be paid into court.

Few courts have addressed this issue, but two courts have arrived at the same conclusion on different facts. In *Transp. Grp., Inc.*, No. 93-30015, 2007 WL 734817 (Bankr. W.D. Ky. March 7, 2007), the Chapter 7 trustee deposited $48,944.18 in funds from unpaid distribution checks into court. One of

---

[5]*Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004) ("[W]hen a statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.") (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (other citations omitted).

4

the creditors in the case, who previously had received a pro rata distribution on its claim, filed a motion seeking payment from the unclaimed monies up to the total amount of its claim. The bankruptcy court denied the motion stating that "[s]imply having unclaimed funds at the end of a case does not mean each creditor can then increase its pro rata share." *Transp. Grp.* at *3. The court further explained that the funds must be held until they were claimed by their "rightful owner." *Id*.

In another unreported case, BAC Home Loan Servicing LP ("BAC") was entitled to receive a pro rata distribution of its unsecured claim under the terms of the debtors' Chapter 13 plan. After the Chapter 13 trustee made distribution under the plan, BAC returned the check to the trustee with a letter stating that "[t]his loan has been service released to: Ocwen Loan Servicing, LLC . . ." *In re Sischo*, No. DG 10-08600, 2014 WL 3908627, *1 (Bankr. W.D. Mich. July 30, 2014) (internal citation omitted). The debtors requested the court to disallow the BAC claim and enter an order directing the trustee to pay Ocwen instead. The bankruptcy court held that until a claim transfer was filed, it could not determine whether Ocwen was entitled to receive the funds distributed to BAC and, therefore, the funds would have to be considered as unclaimed. The court observed that although BAC provided some explanation for why it was returning the funds, once the party entitled to be paid returns a check uncashed, the trustee must treat the funds as unclaimed property under § 347(a) and pay the funds into court.

The factual postures of the preceding cases are different from the situation in this case. However, the same rationale should be applied. In this case, the AFC trustee refused to administer the distribution from the Gettig estate. But unless AFC's creditors were paid in full, AFC remains the rightful owner of the funds and, conceivably, the trustee could be compelled to administer them on behalf of the estate. I agree with the *Transport Group* and *Sisko* courts and find that the provisions of the Bankruptcy Code are unambiguous. The funds returned by the AFC trustee must be paid into court. If they are not claimed after five years, the funds will escheat to the United States Treasury. While I agree with the Trustee that an increased distribution to unsecured creditors would be a more desirable result, there is no statutory or

precedential case authority to support this approach. For these reasons, the Motion will be denied, and the Trustee directed to pay the funds into court. An appropriate order will be entered.

                                                **By the Court,**

*/s/ Mary D. France*
Chief Bankruptcy Judge

Date: March 2, 2016

6